Thank you, Your Honor. May it please the Court, I'm Robert Stone. I'm here on behalf of Defendant Appellant Soren Korzybski. Mr. Korzybski raises six issues in this appeal, and while I certainly try to answer any questions the Court has about any of those issues Why don't you just tell us a little bit about the case so the people in the audience have some idea of what's going on. Mr. Korzybski was convicted at trial of robbing a bank in and around Portland of $732. $732? Yes. There were conflicting descriptions on the scene from the bank teller and one other person in the bank. Mr. Korzybski was seen to have some interaction with a vehicle as he ran away from the bank, or the robber was seen to have some interaction with a vehicle that turned out to be registered to Mr. Korzybski. The police ran the license plates, found out that it was Mr. Korzybski's vehicle, found out that he was also on probation on a state case. Actually, he was not on probation, he was on supervised release after having served time on a state of Oregon case for assault. They contacted his supervising officer. He was arrested four days after the robbery, incarcerated, made some statements about five or six days later, was indicted, and ultimately convicted at trial of bank robbery. As I stated, he's raised several issues in appeal, six to be exact, and while I can try to answer any questions the court may have on any issue, I want to try to address two, at least to begin with in particular. First, is Mr. Korzybski's arrest by his supervising officer on March 24th based on an alleged violation of the terms of his state supervised release condition, and secondly, that the determination by the court that he was a career offender based on a Washington state conviction for residential burglary was also air. We don't have in the record the conditions of his supervised release. Everybody proceeded on the assumption that a condition of his supervised release was that he enter and complete a mental health treatment program. He had entered a program, had been terminated from that program about a month before he was arrested, actually about three weeks before he was arrested. On the 20th of March... What was that, an anger management class? We're not sure. It doesn't really say it was a mental health treatment program. And we also don't know whether it was imposed as a condition of probation by the Board of Post-Prison Supervision, or whether the condition imposed by the board was that he enter and complete a treatment program, or whether the condition imposed was that he be evaluated and enter and treat at the direction of his supervising officer. But didn't he admit that he was out of compliance when he was confronted by his probation officer? He didn't admit that he was out of compliance. He admitted that he'd been terminated from the program that he had been in. For non-attendance, I think. But anyway, out of compliance. He did not dispute that. Well, again, he didn't say he was out of compliance. He'd been terminated from the program. If the condition imposed by the board was that he enter and successfully complete a program during the period of his post-prison supervision, which was 24 months, then he still had... He'd only been on supervision for 8 months, so he still had 16 months to complete the program. If he was in the program at the direction of his supervising officer, then on the March 2nd, when he went in and saw his supervising officer, she told him she'd give him another 30 days to re-enter the program. So at that point, if the condition, again, was at the direction of his PO, he was doing what she had directed, or at least he had not done what she had not done. But as I read your brief, you seem to be arguing that she's somehow bound by that or that that's some type of commitment, that he would definitely be given that additional time. I think she is. If the condition, again, was at her direction, if the board of post-prison supervision said you need to be evaluated and enter a treatment program at the direction of your supervising officer, then he was doing that. He had done that. He had entered a program. She had told him he had another 30 days to get back into that program. So I would submit that that's part of the direction that she was giving him, and he was still under that direction at the time that he was arrested because the 30 days hadn't elapsed yet. That she was giving him a break. She directed him to reenter the program within 30 days. Okay. 30 days hadn't elapsed yet. So he was not out of compliance with her direction as far as the treatment program. Except he was out of compliance. At least he had been discharged from whatever this original requirement was, right? There's not a dispute about that, is there? There's no dispute that he was terminated from the program, but I would dispute that he was out of compliance with the direction from his supervising officer because the direction was to reenter the program within 30 days. He was arrested 18 days after she had directed him to do that. And I think that's crucial to the argument, obviously. The court found that he was out of compliance on March 2nd and that the supervising officer had probable cause to arrest him on March 2nd. And I think that's the error that the court made. He wasn't necessarily out of compliance. Again, if the condition in the judgment said that he must enter and successfully complete a mental health treatment program during the period of his supervision, then he was still during the period of his supervision. So I would submit that he can enter and be terminated as many times as he wants or as many times as he needs to in order to complete that condition during the period of supervision. If the judgment says he must be evaluated and enter a program at the direction of his PO, then he had done that. The direction from his PO when he was terminated was not that you're out of compliance. It's that you need to reenter that program within 30 days. So I would submit that that's part of the direction that she was giving him and 18 days later he was not yet out of compliance with that. And you've got a lot of issues to cover. I'm sorry, Your Honor? You have a lot of issues to cover. I do. I do, yes. So I'll move on. The other issue that I would like to try to touch on is the career offender designation. And I would first alert the court that the language that I quoted from Reina Regas which in that case the court had decided that some documents that the trial court had considered in doing the modified Taylor analysis of his Washington residential burglary conviction was in error. The court could rely on the information or indictment and the plea agreement or the judgment. The court had relied on a pre-sentence report and had taken judicial notice of some other information. Initially in Reina Regas, the panel said that you can't use the PSI and you can't use the stuff you took judicial notice of. You can use the other two things. And by the way, we're going to do a modified category analysis and we find that on the basis of just the information or indictment and the judgment, there's not enough there. A few months later, September of 2011, the court withdrew that opinion and omitted the modified category analysis that they had done and simply again remanded it back to the trial court to do the modified analysis, the categorical analysis on an open record. So to the extent that that language is in my brief, it's not in the withdrawn opinion. I don't think that doesn't change the result of Reina Regas. They still remanded back to the court and there are other cases that say what Reina Regas said and the issue was does including a specific address, a physical address in an information, does a plea of guilty to that information constitute an admission by the defendant to the specific address. And the government has cited a couple of cases in ACCA cases where the court has seemed to say that that is enough, at least under the generic definition of burglary under Taylor. Both of those cases do not address the issue of burglary of a dwelling, which is what we're looking at in this case. And there are other Ninth Circuit cases that specifically say what Reina Regas was omitted in the withdrawn opinion and that is... So I take it you're not disputing the validity of the conviction? No. He was convicted in Washington of residential burglary. What I'm saying is that... Well, I'm saying two things. I mean the conviction in this case. I'm sorry? The conviction in this case. I am... I'm sorry, Your Honor. I didn't understand your question. He was convicted, right? He was convicted in this case. A bank robbery. Yes. And you're not disputing that conviction? Well, not in a career offender analysis. I'm not. I'm saying that at sentencing, if the conviction is upheld, he was not a career offender. But there are several other issues. The initial one being... So you have no problem with the... with the identification procedures applied in this case? Well, I do have a problem with it. It's just that I'm not sure I have enough time to address all of the problems that we have. Did the jury get to see the surveillance photo that the probation officer testified about? No, I don't believe the surveillance photo was shown. But it's in the record, isn't it? It is in the record. She testified that she looked at... There were both photographs that were taken from the surveillance, individual photographs. And she looked at the surveillance video on her computer when Agent Walter brought it over to her office. Were you the trial lawyer? No, I was not. Did Boggs also testify? I'm sorry? The bank manager. I think his name was Boggs. Yes. Did he also testify? Yes, he did. And did he identify the defendant as well? Not from the surveillance photos or the surveillance video. He identified him from a photo throwdown that was done about six days later. I'm not talking about pretrial. I'm talking about... I didn't ask a good question. I meant at trial. Yes. Thank you. So the issue I have... Well, there were two, three actual identifications. One by the bank teller, Ms. Sanyana, who testified at trial that she was certain that the defendant was the person who was the bank robber. At the time of the bank robbery, she was unable... She described him substantially different than he turned out to be. Well, as I understand it, as I understand it, that after the bank robbery, she was shown a photo spread. She could not identify him. Yes. Yeah, okay. And then... But the other gentleman who was in the bank who chased after the robber, he was able to make an identification. Mr. Boggs was... Boggs, yes. He chose Mr... And then, oh, some time later, the victim teller was told by the prosecutor that your client would be in court on a motion to be released on bail. Right? Yes. And the teller was told that the defendant would be in court and she may want to visit the courtroom and watch the proceedings. But she didn't have to. Is that what happened? Well, we're not exactly sure what she was told. What the record reflects is that the notice was given that there was going to be a release hearing more than likely under the Crime Victims Act. Was she called by the prosecutor? She testified at trial that she was notified by bank corporate security who were notified by the prosecutor as the bank being the victim. So, as I understand what the record reflects is that Ms. Sanjana testified that she was notified by corporate security. So the assumption is that the prosecutor notified the bank's corporate security. They notified her. So to the extent that there was government involvement in her appearance at the release hearing, there was. It's somewhat attenuated, but it's certainly there. Whether that's enough under Perry v. New Hampshire I think is an open question. I would submit that it is. It doesn't have to be intentional government involvement or they don't have to involve themselves with the intent of creating a suggestive encounter. But she wouldn't have been there had it not been for the notice the government gave, at least to the bank. Having been there and having not been able to identify Mr. Korzybski at the time, having described him substantially different at the time than his DMV description or his actual description, it was submitted that the... Well, she went in the courtroom the same courtroom where the trial was held and he was there in prison garb and she sat in the gallery and she never saw his face but she said that she was sure that that was the robber just from a side view. Did that happen? I don't believe that she said at that time that she was sure he was the robber. What the record reflects is that about four months later she attended this release hearing. Sometime later she told agents that she thought, based upon being able to see him from the back and the side at the release hearing, she now believed that he was, she thought he was the robber. At trial she said she was absolutely certain. So the proceedings of events are bank robbery, different description, description that doesn't match defendant, unable to identify him from a photo or a throw down. Attendance at a release hearing where he appears as defendant, as he accused in front of the court thinks that he's now the one and four months later or several months later at trial she becomes certain he's the one. So I think there's certainly a suggestiveness in the train of events. I also would submit that there's government involvement in the notification at least to the bank. Again, it's certainly somewhat attenuated but it's there. Perry doesn't tell us, I don't think, how much government involvement is required. So I would submit that that ties together and that the court then needs to look at the reliability and the possibility of the taint that the attendance at the release hearing imposed upon her subsequent certain identification at trial. So if I can just be clear for just one more minute, the other part of the sequence to make sure I'm understanding the facts correctly is that Boggs, the bank's manager, ran after whoever it was who robbed the bank and saw an individual in the parking lot talking to the driver of a Mercedes and got the license plate of the Mercedes and reported that to the police and that was registered to your client and Mr. Boggs provided an identification that pretty well did match your client and was able to identify your client from a photo thrown down shortly after the robbery, is that right? And then identified him again at trial. Mr. Boggs chased the bank robber from the bank, he saw him run by a vehicle and appear he didn't stop and enter a discussion, as he ran by the vehicle it appeared to Mr. Boggs that he said something to the driver of the vehicle the driver the vehicle left, he got the license plate, the car was registered to Mr. Korzybski Mr. Boggs described him as 5 foot 10 200 pounds, somewhere between 25 and 40, a white male his DMV description says that he's 6 foot tall 220 pounds, he's 28 years old so in the sense that that roughly corresponds, I guess it does, he's a white male under 40 the bank robber had glasses, he had hair um Mr. Korzybski doesn't wear glasses, he has a shaved head, so there were definite differences in the description it's the allegation that he was wearing a wig but nobody thought it was a wig at the time the descriptions were that he had long brown hair underneath a hat Did Mr. Boggs identify your client from a photo thrown down? About 6 days later he did select him from a photo thrown down. I just have one more question forgive me for taking so much of your time there are these notice references in your brief to a comparison of how your client described this bank robber and your client's DMV description? Yes Do I have anything that tells me how tall your client is? The DMV description was that he was 6 foot tall, he weighed 220 pounds. Was the jury given anything else about how your client looked close to I don't know when the DMV description was taken down or when that photo was What else the jury had to indicate on the day of the robbery or at about that time how tall your client was and how much he weighed and what his hair may or may not have looked like There was some testimony and I don't actually recollect who it was that he looked thinner at trial than he did on the day of the robbery but as far as what the jury was told other than that I think all they had was the DMV description that was presumably his inaccurate description at the time of the robbery when he was described by Boggs as 20 pounds lighter, 2 inches shorter, was described by Ms. Sanjana as 60 pounds lighter and 4 inches shorter Well when he was in custody in the Washington County Jail He was visited by an FBI agent Isn't that right? Yes, 6 days after When the FBI agent showed him surveillance photos of the robbery Korzebinski said What am I looking at here? 5 That was among the things that he said Well I mean he said it He could have said good morning too He made a couple of statements that were admitted at trial, one being Why don't you show me what you have? The other was What am I looking at here? 5 years And my position is that those statements were the result of his illegal arrest by his PO and that those should be should have been suppressed Along with the evidence seized as a result of a search warrant that was based at least partially on the statements made to Agent Furnia 6 days after he was arrested after having sat in jail for 6 days that the warrant if you excise the information of the arrest by the PO Your time is up Thank you Good morning Your Honors May it please the court My name is Leah Bohlstad appearing on behalf of the United States I would like to answer your question first Your Honor. You asked if there was anything in the record showing what Mr. Korzybski looked like at the time of the robbery. Government's exhibit number 46 in S.E.R. page 20 shows his booking photograph about the time of the bank robbery in April 2010. That photograph shows that he is a white male and the identifiers show that he is 26 years old, 6 feet tall 180 pounds So the bank manager described him as 25 to 40 5'10 and 200 pounds That's correct So the bank manager was fairly close on and in conjunction with that the bank teller described him as having a round face, light complexion and long chin as depicted in government exhibit 46. He indeed bears those characteristics But she was off considerably. She thought he was 5'8 She was off in the height She was off in the weight She was off She was off by 40 pounds in the weight and 4 inches in the height And that is exactly the kind of thing that the jury is supposed to take into account when considering the reliability of that identification Reliability of eyewitness IDs has always been the province of the jury as this court has recognized and as the Supreme Court held in Perry v. New Hampshire the recent January 2012 case The court there held that where there is no improper law enforcement activity in arranging a unduly suggestive identification procedure, then it is not the job of the judge It is rather the province of the jury to determine the reliability of eyewitness identifications. And it suffices for the jury to use those traditional protections and rights that are in place to ensure that the eyewitness testimony is reliable. Those protections were used in this case First, the victim the victim teller was subject to vigorous cross-examination as the record reflects in page 541 to 582 Second, Mr. Korzybski received effective assistance of counsel. His counsel brought up every single weakness about those eyewitness identifications in opening, closing, and throughout the case Also, Judge Brown gave the instructions at the end of trial about the fallibility of eyewitness identification and the jury's job to determine if the government had met its burden of proof beyond a reasonable doubt All of those things ensure the reliability of the eyewitness testimony Were you the trial lawyer? Yes, Your Honor This witness was coached a little bit, wasn't she? About who this man was that she saw in the arraignment or the bail hearing There was no evidence in the record that this witness was coached In fact, Judge Brown invited the prosecution to ask her prior to the entry of the jury coming into the room whether she recognized the defendant The prosecution declined that invitation thinking it would be more reliable to have only one answer given one time in front of the jury We would take whatever answer she had She was not coached at the detention hearing The government didn't even know she was present until afterwards She sat in the back of the room where she only saw the side of the defendant's face Who told her to go to the detention hearing? The United States Attorney's Office complying with its statutory requirement to notify crime victims of detention hearings, plea hearings, and sentencing hearings under 18 United States Code 3771 That is a duty we have We send out letters in the mail notifying them of time and place She was neither asked if she recognized anyone nor did the agents inquire with her afterwards what she thought about that Did you talk to her? Yes, Your Honor And what did you tell her? What I told that victim is not in the record She was a witness for my co-counsel, Mr. Winehouse But she was not coached Did you talk to her about the bail hearing? No, Your Honor I was not even on the case at that time Unfortunately Isn't there something in the record to indicate that the U.S. Attorney's Office contacted her after the bail hearing to ask her after the pre-trial hearing to ask her whether she was able to identify him after seeing his profile? The FBI agent presented that there wasn't any conversation with her afterwards I don't think that's correct The FBI agent spoke with her about being at the bail hearing but I don't think it was explicitly asked Hey, was the defendant in the room at the time? I think she was allowed to leave and although that is arguably although it is arguably a suggested circumstance that a victim of crime comes to a detention hearing  This Court has never held that a crime victim showing up for something she has a right to be present for somehow makes later identifications Was her defense lawyer advised of this? He was there at the hearing of course But was he told that the teller would be there? I'm not sure I was not involved But he did make great use of it at trial I didn't ask you that I asked you if he was told that the witness the bank teller was going to be there And my answer is I'm not sure what he was told because I was not there What is this other prosecutor have to say about it? Is there anything in the record about that? There's not in the record The defense hasn't put anything in the record nor did they at trial to suggest that there was anything impermissibly suggested In fact, the defense conceded in front of Judge Brown that there were no impermissibly suggestive circumstances and Judge Brown made an explicit How could that be if she's told by the prosecutor that there's this bail hearing and she can go there if she wants to she doesn't have to but it's up to her and she goes to the bail hearing and here's the defense saying here's the defendant and he's dressed in prison clothes and he's there with a lawyer in the same courtroom where the trial subsequently was held and and then when she's through she wasn't asked if she made an identification if she could identify the defendant because keeping in mind that she couldn't do it when that sex photograph spread was put before I don't disagree that all of those factors are slightly suggestive the problem is the defense attorney did not raise those the defense attorney didn't raise them he waived that argument maybe we've got an incompetence of counsel here he seems to be living in a different world quite to the contrary he filed over 13 motions what does that mean he did a fantastic job what does that mean filing 13 motions it also means that the supreme court has explicitly rejected the very argument about due process that the defendant raises now without some prerequisite being met this court cannot get to the reliability analysis that analysis is reserved for a jury that is the traditional province of the jury not the judge wait a minute now the judge can make rulings under 403 so you can't say sure it may be the traditional process of the jury but you're just telling me that the judge has nothing to do with that decision and what the jury gets to see allow me to be clear this is an analysis under the due process clause not under 403 the challenge is due process that decision was made by Perry v. New Hampshire in January 2012 it's not about 403 that was not raised here I would also like to address the career I'm talking about your arrogance that's what I'm talking about not the constitutional issue my apologies your honor if you find me to be arrogant I'm simply responding to the arguments raised below dealt with by the trial judge don't tell me that the judge has no role to play in what evidence is presented to the jury because that's absolutely incorrect the judge absolutely has a role I agree but what is on appeal is whether that role in the due process clause analysis was correctly performed and Judge Brown did exactly that well nobody's arguing about that what bothers me is the fact that here's here's a teller she's the victim she's shown a photo spread she's unable to make an identification then she's told about the bail hearing she goes to the bail hearing she sits there she sees the defendant in prison garb he's the only one there as far as I record shows there could be other people there but if they are I don't remember that and then when she's asked by the agent or by the prosecutor whether she's able to make an identification this was done after the hearing she said yes that she was able to identify him although all she could see was the side view of his face and then a period of time elapsed and she was again asked and she said that she was thinking about it I'm just paraphrasing and now she wasn't sure that that was the same person and then she comes to court and she makes a positive identification and he's sitting there again next to his lawyer and I guess what troubles me is the fact that she's told by the government to go to this hearing if she wishes and that certainly he's going to be there Korsbisky and it seems to me that that her going there and first she could make the identification then she wasn't sure I mean there's something going on here tell me what was going on here What was going on here Your Honor? I mean it kind of I don't disagree that it smells a little bit and I think the defense attorney did a great job of bringing that stink right in front of the jury at trial but he didn't raise it pre-trial as an impermissibly suggestive circumstance that is what is required by the Supreme Court in Perry he waived it and Judge Brown found no suggestion of impermissible conduct had been raised that's in the record at page 321 How did the Now Sanzana told Mr. Winehouse that she was not sure that the man she saw in the courtroom was the robber Right. The side of his face How did that get before the jury? I believe it got through the jury in his cross-examination at pages 541 through 582 and also in closing argument. I believe Mr. Reid asked the victim isn't it true you were here at the detention hearing and you couldn't tell at that time similar to the photo throwdown she couldn't tell at that time and yet at trial she could but there was an additional element at trial that the victim had the benefit of we asked the defendant Mr. Korzybski to do a oral a voice countdown or a count up from 1 to 10 after he reached 10 the victim said with certainty that is the robber because after being with him face to face where he demanded 20s 50s and 100s right now she remembered that voice and she'll likely remember it for the rest of her life the testimony didn't strike me that way I wasn't there at the trial of course but she said that he said 20s 50s and 100s that he didn't use an angry voice she didn't even know what he meant the first time and then he repeated those words and he repeated it he repeated it stronger and he added right now he also had his hands in his pocket I just have a question about this constitutional issue which you are at I think what you're talking about is the district court docket at 70 that's the motion filed by the defense council it says the previous identification procedures and the results are not the subject of this motion and that's the motion you filed seeking a sort of a line up in court right so my question is was there any other motion or objection made by the defense council about the pretrial identification procedures that's my question he did not make an explicit motion about it and the judge found that he had not raised any suggestion of impermissible circumstances okay you have a picture of the that was taken by the banks camera it was in color wasn't it it was your honor and those are in the record at SCR do you have a copy of that yes I do it's in SCR 4 through 6 yeah the one I have is black and white I'm pleased to show it to you now if you'd like just hand it to the hand it to the clerk while you're doing that could I just ask the government didn't reach harmlessness I realize you're arguing strenuously that this constitutional issue was raised but if it wasn't the government didn't didn't brief harmless error no because the government was confident that he hadn't made the prerequisite showing under Perry v. New Hampshire but even if he had even if there was some taint here with the victim's eyewitness identification if that was the only evidence we had at trial I would concede that would be a much bigger problem but this case was about far more as your honor pointed out Mr. Boggs made a fantastic description of the suspect at the time I don't think I used the word fantastic but go ahead sorry your honor my words he made a decent description of the suspect at the time he picked Mr. Korzybski out of a six pick he testified at trial identifying him and his vision was so good to see Mr. Korzybski's license plate the trial court judge said that the circumstantial evidence quote was a far cry from a definitive and certain statement that this is the man who robbed the bank so if we get to the harmless error standard and you of course know that's a very high burden because we're talking about a constitutional error how should we well should we even reach it should we respond if we do if we find that it wasn't waived and you haven't briefed the issue then do you want an opportunity quickly to respond yes your honor this error and I believe you're referring to the eyewitness identification testimony this error would be harmless error both because the defense had the opportunity to test the reliability of that identification in many ways and also because of all the other evidence that proved the defendant's guilt here including his own statement including evidence seized during the search warrant at his apartment tying him to the bank robbery including the fact that his vehicle was at the scene minutes after the robbery with an engine running idling with a getaway driver all of these things link him without a doubt to this bank robbery regardless of what the victim testified to well you know you had plenty of good evidence didn't you absolutely it's tough to prove that beyond a reasonable doubt no you had good evidence but what bothers me is why she had to go to that bail hearing and sit there and was sort of suggested she go because she couldn't make an identification earlier and I'm sure that the prosecutor who called her left it open you don't have to go well I'm going to be up and she moved to the I believe to the state of Washington and she said well I'm going to visit some people in Oregon and so whatever she said and she went in there and there he was in prison garb and she knew that or had a pretty good idea that he was going to be there all she saw was the side of his face and she was pretty sure that was the guy and then later on she wasn't sure she changed her mind and then after that when you had this uncertainty she comes into the court room and makes a positive identification there's something going on there and it needn't have happened that way because you had plenty of good evidence but you don't know when to let good enough alone you got to bring all this other stuff in there it's out of line it's out of line because we know that eyewitness identification is inherently unreliable we got a lot of cases that say that and you didn't really need her you had Mr. Boggs if I may your honor I have two responses for you number one I would submit that the government complying with its statutory duty to notify crime victims of hearings we would be in trouble if we hadn't sent the letter but also number two the supreme court has recognized and this court in Dixon long before Perry recognized that the failure to raise these issues at the district court prevents the district court from being able to review the argument so how can it be an abuse of discretion which is the standard of review here I'm not talking about the district court I'm talking about your office that's what I'm talking about and I stand by my office's decision I'm talking about what appears to be to me a little overreaching maybe we wouldn't even be here and have to spend hours and hours and hours of this if a little restraint and evaluation was done you had it all but you gotta muck it up if there are no further questions I should thank you for bringing us this business because it not only adds to our job security but it adds to the national gross product thank you you gonna say something I would just like to point out to the court if I could that if in fact the panel decides that the argument was waived the court can always look at this I think under a plain error standard and I would just distinguish this from Perry and again Perry says that there must be police or government involvement in Perry it was an inadvertent witness viewing while the defendant was being kept at the scene here this was months after the robbery and it was a viewing that at least the but for cause was because of the government's notice while they may have an obligation or they may be required under the statute to notice a crime victim what we're arguing here is a constitutional due process violation and I would submit that if there's a conflict that the constitution you didn't make any objections along those lines did you the trial counsel didn't is that right counsel I asked the question of opposing counsel but was there anywhere in the record where the pretrial identification was challenged no that's all I have thank you the matter is submitted number two Evans versus Multnomah County thank you
judges: Goodwin, Pregerson, Christen